JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CHERYL WISEMAN

## DEFENDANTS

STRYKER SALES, LLC and STRYKER EMPLOYMENT COMPANY, LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Console, Esq., Console Mattiacci Law, 1525 Locust Street, 9th Fl., Philadelphia, PA 19102
215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; 43 P.S. § 951, et seq.

Brief description of cause: Plaintiff was discriminated because of her sex and retaliated against based on her complaints of sex and race discrimination.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ In excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
05/3/2023

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Levittown, PA 19056 _____

Address of Defendant: _____ 2825 Airview Blvd. Portage, MI 49002 _____

Place of Accident, Incident or Transaction: _____ Levittown, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 05/03/2023 _____ _____signature_____ _____ 317235 _____
                                      *Attorney-at-Law / Pro Se Plaintiff*             *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*                      **B.**   *Diversity Jurisdiction Cases:*

| A. Federal Question Cases | B. Diversity Jurisdiction Cases |
|---|---|
| ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. Insurance Contract and Other Contracts |
| ☐ 2. FELA | ☐ 2. Airplane Personal Injury |
| ☐ 3. Jones Act-Personal Injury | ☐ 3. Assault, Defamation |
| ☐ 4. Antitrust | ☐ 4. Marine Personal Injury |
| ☐ 5. Patent | ☐ 5. Motor Vehicle Personal Injury |
| ☐ 6. Labor-Management Relations | ☐ 6. Other Personal Injury *(Please specify):* ___ |
| ☑ 7. Civil Rights | ☐ 7. Products Liability |
| ☐ 8. Habeas Corpus | ☐ 8. Products Liability – Asbestos |
| ☐ 9. Securities Act(s) Cases | ☐ 9. All other Diversity Cases |
| ☐ 10. Social Security Review Cases |      *(Please specify):* ___ |
| ☐ 11. All other Federal Question Cases | |
|      *(Please specify):* ___ | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Kevin Console _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 05/03/2023 _____ _____signature_____ _____ 317235 _____
                                        *Attorney-at-Law / Pro Se Plaintiff*             *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| CHERYL WISEMAN, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STRYKER SALES, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                         ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        ( X )

| | | |
|---|---|---|
| 05/3/2023 | ⟍⟋ | Plaintiff, Cheryl Wiseman |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-689-4137 | Kevinconsole@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHERYL WISEMAN**<br>Levittown, PA 19056<br><br>*Plaintiff,*<br><br>v.<br><br>**STRYKER SALES, LLC,**<br>2825 Airview Blvd.<br>Portage, MI 49002<br><br>and<br><br>**STRYKER EMPLOYMENT COMPANY, LLC**<br>2825 Airview Blvd.<br>Portage, MI 49002<br><br>*Defendants.* | **CIVIL ACTION NO.**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Cheryl Wiseman ("Plaintiff"), brings this action against her former employers, Stryker Sales, LLC and Stryker Employment Company, LLC (collectively, "Defendants") for discriminating against Plaintiff because of her sex and retaliating against Plaintiff based on her complaints of sex and race discrimination, culminating in the termination of Plaintiff's employment for false and pretextual reasons.

Defendants' conduct is violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"). Plaintiff seeks all damages, including economic loss, compensatory

damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.  **PARTIES**

1.      Plaintiff, Cheryl Wiseman, is an individual and citizen of Pennsylvania. She resides in Levittown, PA.

2.      Plaintiff is female.

3.      Defendant, Stryker Sales, LLC (f/k/a Stryker Sales Corporation), is a Michigan corporation with a principal place of business located at 2825 Airview Boulevard, Portage, MI 49002.

4.      Defendant, Stryker Sales, LLC, is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

5.      Defendant, Stryker Employment Company, LLC, is Michigan corporation with a principal place of business located at 2825 Airview Boulevard, Portage, MI 49002.

6.      Defendant, Stryker Employment Company, LLC, is engaged in an industry affecting interstate commerce and regularly conducts business in the Commonwealth of Pennsylvania.

7.      Defendants collectively maintain and operate offices located in Pennsylvania, including within the Eastern District of Pennsylvania judicial district.

8.      At all relevant times, Plaintiff primarily worked for Defendants' remotely from her home office in Levittown, PA.

9.      Defendant Stryker Employment Company, LLC is the "alter ego" of Defendant Stryker Sales, LLC.

10.     Defendants collectively presented themselves as a single company such that third

parties dealt with them as one unit.

11.　During Plaintiff's employment with Defendants, Plaintiff received a tax Form W-2 from both, Defendant Stryker Employment Company, LLC and Defendant Stryker Sales, LLC.

12.　Defendant Stryker Employment Company, LLC shares with Defendant Stryker Sales, LLC, *inter alia*, Common ownership, office locations, personnel policies and employment practices.

13.　Defendants are interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise. Defendants collectively caused the unlawful actions complained of herein.

14.　At all relevant times, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

15.　At all relevant times, Defendants employed fifteen (15) or more employees.

16.　At all relevant times, Defendants acted as an "employer" within the meaning of the statutes forming the basis of this matter.

17.　At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the statutes forming the basis of this matter.

III.　**JURISDICTION AND VENUE**

18.　The causes of action forming the basis of this matter arise under Title VII, Section 1981 and the PHRA.

19.　The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5, 28 U.S.C. §1331 and 28 U.S.C. §1332.

20.　The District Court has jurisdiction over Count II (Section 1981) pursuant to 42

U.S.C. §1981, 28 U.S.C. § 1331 and 28 U.S.C. §1332.

21.     The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367 and 28 U.S.C. §1332.

22.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

23.     On or about April 9, 2021, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein. This Charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as "Exhibit 1" is a true and correct copy of that PHRC Complaint (with personal identifying information redacted).

24.     On or about February 9, 2023, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as "Exhibit 2" is a true and correct copy of that Notice (with personal identifying information redacted).

25.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

26.     Plaintiff began working at Defendants on or about January 4, 2016.

27.     Plaintiff worked out of her home office in Pennsylvania.

28.     Plaintiff last held the position of Manager of Clinical Solutions.

29.     Plaintiff consistently performed her job duties in a highly competent manner.

30.     Plaintiff last reported to Scott Sagehorn (male), Senior Director of Marketing.

31.     Sagehorn reported to Jessica Mathieson (female), Vice President and General Manager.

32.     Before Plaintiff reported to Sagehorn, she reported to Steve Bellisari (male), Senior Director of Marketing.

33.     Plaintiff was told that Bellisari (male) had sex with a female subordinate.

34.     In or about May 2016, at a business conference, Beau Whitson (male), Regional Sales Leader, a superior to Plaintiff, made comments to her of a sexual nature.

35.     The sexual comments from Whitson include, but are not limited to, the following examples:

   a.  Whitson told Plaintiff that he was going to "fuck" her that night;

   b.  Whitson asked Plaintiff what hotel she was staying in and what her hotel room number was; and

   c.  Whitson continued asking Plaintiff questions of a personal nature throughout the evening.

36.     Plaintiff rebuffed Whitson's sexual advances.

37.     In or around May 2016, following the above, Olivia George (female), Lead Clinical Nurse Consultant, told Plaintiff that Whitson was "slimy," a "known creep," and had a history of sexually harassing female employees, including George.

38.     Whitson remains employed with Defendants.

39.     George (female) told Plaintiff that she was disciplined for having sex with a male coworker but that the male coworker who she had sex with, Jeff King (male), Account Manager, was not disciplined.

40.     Male employees routinely commented about female employees' bodies and appearance.

41.     Male employees treated female employees in a dismissive, demeaning, and

condescending manner.

42.    Male employees regularly made comments of a sexual and sexist nature.

43.    Plaintiff never heard male employees making similar comments to male employees.

44.    Female employees were regularly treated differently and worse than male employees, including in front of upper-management, who failed to prevent or correct the discriminatory behavior.

45.    Plaintiff found male employees' comments and conduct to be offensive, based on sex, and contributing to the hostile work environment to which she was subjected.

46.    In or about August 2018, at a mid-year meeting, Plaintiff heard Brad Fine (male), Director of Marketing, make race-based comments to Christina Birckhead (Black), Clinical Nurse Consultant, one of Plaintiffs direct reports.

47.    Plaintiff objected to Fine's comments and told Fine that he had crossed the line in making a racist comment.

48.    In response, Fine told Plaintiff to get out of his face and "go the fuck to bed."

49.    In or around August 2018, immediately following the above, Plaintiff complained to Bellisari of Fine's race discriminatory comments to Birckhead as well as Fine's demeaning conduct in response to Plaintiff's objection.

50.    In or about August 2018, following the above, Plaintiff met with Bellisari and Kate Bekesiack (female), Human Resources, and complained of race discrimination and retaliation.

51.    During this meeting, Plaintiff complained of Fine's race discriminatory comments to Birckhead (black) and Fine's demeaning conduct in response to Plaintiff's objection.

52.     Defendants failed to investigate Plaintiffs race discrimination and retaliation complaints.

53.     Defendants failed to take any action to remedy or prevent the race discrimination and retaliation at Defendants.

54.     In or about August 2019, Malori Paplow (female), Clinical Marketing Manager, told Plaintiff that Chad Rohrer (male), Director of Sales, told Paplow how many times per day he thought about her and that he masturbated when he thought about her.

55.     Paplow told Plaintiff that, on a business trip, Rohrer whispered his room number in Paplow's ear when he was hugging her, and later called her and asked her to come over to his hotel.

56.     In or about August 2019, following the above, Paplow told Plaintiff that she complained to Bekesiack of sexual harassment at Defendants.

57.     Bekesiack instructed Paplow to speak with Stephanie Cloney (female), Employee Relations.

58.     In or about August 2019, following the above, Paplow told Plaintiff that she complained to Cloney of Rohrer's comments and conduct of a sexual nature.  Paplow told Plaintiff that she complained that Rohrer was making sexual advances toward her, and that there was a pattern of sexual harassment at Defendants.

59.     Cloney told Paplow to speak with George and Plaintiff regarding their experiences.

60.     On or about August 21, 2019, in a meeting with Cloney, Plaintiff complained of sexual harassment.

61.     During this meeting, Plaintiff complained of the following, without limitation:

7

a.  Plaintiff complained of the sexual harassment to which she was subjected by Whitson in May 2016, including that Whitson told her that he was going to "fuck" Plaintiff that night, asked her what hotel she was staying in, what her hotel room number was, and continued asking her questions of a personal nature throughout the evening.  Plaintiff stated that she rebuffed his advances. She explained that she was scared to complain previously, especially as a new employee, because she was afraid of retaliation and that Plaintiff would lose her job if she spoke up; and

b.  Plaintiff complained that there was a pattern of sexual harassment at Defendants.

62.     Defendants failed to investigate Plaintiff's sex discrimination complaints.

63.     Defendants failed to take any action to remedy or prevent the sex discrimination at Defendants.

64.     Following Plaintiff's August 2019 complaints of sexual harassment, Cloney resigned from Defendants.

65.     Upon information and belief, Cloney resigned from Defendants because Defendants repeatedly failed to properly remedy or address numerous sexual harassment complaints from female employees.

66.     Rohrer remains employed with Defendants.

67.     In or about May 2019, Plaintiff began reporting to Sagehorn.

68.     Sagehorn was aware that Plaintiff had complained of sex discrimination.

69.     On or around April 22, 2020, in a virtual meeting with Sagehorn and Bekesiack, Plaintiff was issued a Written Warning.

8

70.     Defendants' stated reason for the Written Warning was an alleged business expense issue that had occurred months prior.

71.     The Written Warning was unfounded, false and pretextual. Plaintiff's performance did not warrant a Written Warning.

72.     Sagehorn told Plaintiff that this type of Written Warning, for these types of alleged expense issues, had never previously been issued to any other employee.

73.     Similarly situated male and/or non-complaining employees were not issued Written Warnings for the same or similar alleged issues.

74.     Defendants issued Plaintiff a Written Warning because of her sex and/or her complaints of discrimination.

75.     Defendants treated Plaintiff differently and worse, and in a more hostile and dismissive manner, than male and/or noncomplaining employees were treated.

76.     On or around February 8, 2021, Plaintiff participated in a business lunch with Paplow, Brendan Bayers (male), Sales Account Manager, and Jeff Thompson (male), Director of Clinical Experience.

77.     Defendants' policy is that the highest-ranking employee is to pay for business meals and submit the receipts for reimbursement.

78.     At the February 8, 2021 lunch, Thompson was the highest-ranking employee present.

79.     Following the lunch, Thompson refused to pay for the full cost of the lunch to submit for reimbursement.

80.     When Thompson declined to pay for the entire lunch, Plaintiff reminded Thompson that Defendants' policy was that the highest-ranking employee is to pay for the

business meal and submit the receipt for reimbursement.

81. Thompson still refused to pay the full bill, and only agreed to pay for his own and Bayer's meals.

82. Thompson told Plaintiff that she should pay for her own and Paplow's meals. He told Plaintiff that she would be fine.

83. Per Thompson's instruction, Plaintiff paid for Paplow's and her meals and thereafter submitted her receipt for reimbursement.

84. On February 20, 2021, Sagehorn told Plaintiff that he would approve her expense reimbursement report for the February 8, 2021 business lunch.

85. On February 21, 2021, during a phone call with Danielle Parmalee (female), Compliance, Parmalee asked Plaintiff why Thompson did not pay the full bill for the February 8, 2021 business lunch and why Plaintiff paid and submitted reimbursement for part of the bill. Plaintiff explained to Parmalee that Thompson refused to pay the full bill, and instead instructed her to pay for Paplow's and her meals and submit her receipt for reimbursement. Plaintiff stated that she reminded Thompson of Defendants' policy, but when he still refused to pay for the full bill, Plaintiff followed Thompson's instructions.

86. Plaintiff asked Parmalee what she could have done differently when the highest-ranking employee refused to pay.

87. Parmalee responded that she did not know what Plaintiff could have done differently.

88. On February 21, 2021, following the above, during a phone call with Sagehorn, Plaintiff told him about her conversation with Paramlee, and asked if he understood why she paid for Paplow's and her meals and submitted reimbursement for the same, as Thompson refused to

10

pay the full lunch bill.

89.    In response, Sagehorn stated that he understood but that she had previously been issued a Written Warning, and he did not know if this would lead to her termination.

90.    Plaintiff told Sagehorn that she did not know what she could have done differently since Thompson refused to pay.

91.    Sagehorn did not provide Plaintiff with any suggestions for what she could have done differently.

92.    On February 26, 2021, in a phone call with Sagehorn and Morgan Szumski (female), Senior Director of Human Resources, Plaintiff was terminated, effective immediately.

93.    Defendants' stated reason for terminating Plaintiff was that she requested reimbursement on a company expense that she should not have paid for.

94.    During the termination phone call, Plaintiff asked why she was being terminated when it was Thompson who had refused to pay the full bill for the business lunch and instructed her to pay for a portion of it and submit the expense for reimbursement.  Plaintiff asked what she should have done differently in that situation.

95.    In response, Sagehorn did not answer Plaintiff's question and told her that many people were part of the decision and investigation.

96.    During the termination phone call, Plaintiff stated that she had positive performance, and asked why she was being terminated instead of being placed in another position.

97.    Sagehorn acknowledged and praised Plaintiffs positive performance for 2020 but stated that transferring her to another position at Defendants was not being considered.

98.    Defendants did not provide Plaintiff with any explanation as to why she was not

being considered for any other position with Defendants.

99.    Shortly after Plaintiff's termination, a Regional Manager from Defendants told Plaintiff that Defendants have a pattern and practice of issuing write ups for alleged business expense issues when they want to get rid of an employee.

100.    Defendants terminated Plaintiff's employment because of her sex and/or her complaints of race and sex discrimination.

101.    Plaintiff was the only employee reporting to Sagehorn who was terminated effective February 26, 2021.

102.    Upon information and belief, no other employees reporting to Sagehorn were terminated in February 2021.

103.    Plaintiff was given no opportunity to remain employed with Defendants.

104.    Before complaining of sex and race discrimination, Plaintiff had no performance or disciplinary issues.

105.    Defendants retained and did not terminate Thompson (male).

106.    Defendants did not discipline Thompson – let alone terminate him – as a result of his violation of company policy in connection with his refusal to pay the full bill for the February 8, 2021 lunch and/or his instruction to Plaintiff to pay for part of the bill.

107.    Defendants retained and did not terminate male and/or noncomplaining employees who violated Defendants' policies.

108.    Defendants subjected Plaintiff to a hostile work environment because of her sex and/or her complaints of discrimination.

109.    Defendants assigned Plaintiffs job duties, responsibilities, and direct reports to Ryan Wieczerza (male), Lead.

110.    Wieczerza previously reported to Plaintiff.

111.    Wieczera had not complained of discrimination at Defendants.

112.    Plaintiff was more qualified to perform her job duties and responsibilities, and manage her direct reports, as compared to the non-complaining male employee to whom those responsibilities were assigned.

113.    Defendants' sex discrimination constitutes a continuing violation from Plaintiffs date of hire through her termination date.

114.    Defendants' retaliatory hostile work environment constitutes a continuing violation from Plaintiff's first complaints of discrimination through her termination date.

115.    Defendants did not take any action to remedy or prevent the sex discrimination and retaliation to which Plaintiff was subjected.

116.    Defendants' sex discriminatory and retaliatory conduct toward Plaintiff has caused her emotional distress.

117.    Defendants' comments and conduct evidence a bias against female employees and/or employees who engage in protected activity.

118.    Defendants have an underrepresentation of female employees in high level positions.

119.    Only three (3) out of the ten (10) employees on Defendant's Leadership Team are female.

120.    Only two (2) out of the nine (9) individuals on Defendant's Board of Directors are female.

121.    Only three (3) out of the twenty-two (22) Regional Managers in Sales Leadership are female.

122.    There are no female Area Directors in Sales Leadership; all four (4) are male.

## COUNT I – TITLE VII

123.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

124.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

125.    Defendants acted intentionally and willfully, with malice and/or reckless indifference to Plaintiff's federally protected rights, and with knowledge that their actions violated the law and/or with knowledge that their actions may violate the law, warranting the imposition of punitive damages.

126.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

127.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

128.    No previous application has been made for the relief requested herein.

## COUNT II – SECTION 1981

129.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

130.    By committing the foregoing acts of retaliation against Plaintiff, Defendants have violated Section 1981.

131.    Defendants acted willfully and/or intentionally with malice and/or reckless indifference to Plaintiff's federally protected rights, and Defendants' conduct was especially

14

egregious, warranting the imposition of punitive damages.

132.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

133.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

134.    No previous application has been made for the relief requested herein

## COUNT III – PHRA

135.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

136.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

137.    As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

138.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

139.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

15

(a) declaring the acts and practices complained of herein to be in violation of Title VII;

(b) declaring the acts and practices complained of herein to be in violation of Section 1981;

(c) declaring the acts and practices complained of herein to be in violation of the PHRA;

(d) enjoining and permanently restraining the violations alleged herein;

(e) entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(f) awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(g) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(h) awarding punitive damages to Plaintiff under Title VII and Section 1981;

(i) awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981 and the PHRA;

(j) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(k) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW LLC**

Dated:      May 3, 2023                    By:  /s/ *Kevin Console*
                                                Kevin Console, Esquire
                                                1525 Locust St., 9th Floor
                                                Philadelphia, PA 19102
                                                (215) 545-7676

                                                *Attorney for Plaintiff,*
                                                *Cheryl Wiseman*

# EXHIBIT 1

# COMMONWEALTH OF PENNSYLVANIA

## GOVERNOR'S OFFICE

### PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| | : |
| Cheryl Wiseman, | : |
|     Complainant | : |
| | : |
| v. | : PHRC Case No. 202002419 |
| | : |
| Stryker Sales Corporation; Stryker | : EEOC No. 17F202161252 |
| Employment Company LLC, | |
|     Respondent | : |
| | : |

## COMPLAINT

## JURISDICTION

1. Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

## PARTIES

2. The Complainant herein is:

   Cheryl Wiseman

   

3. The Respondent herein is:

   Stryker Sales Corporation; Stryker Employment Company LLC
   2825 Airview Boulevard
   Kalamazoo, MI 49002

Case 2:23-cv-01675-MSG    Document 1    Filed 05/03/23    Page 23 of 35

Received

APR 0 9 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:

**CHERYL WISEMAN**                                Docket No.  202002419

v.

RESPONDENT:

**STRYKER SALES CORPORATION**

and

**STRYKER EMPLOYMENT COMPANY LLC**

1. The Complainant herein is:

   Name:    Cheryl Wiseman

   Address:  ████████████████

2. The Respondent herein is:

   Names:   Stryker Sales Corporation; Stryker Employment Company LLC

   Address:  2825 Airview Blvd
             Kalamazoo, MI 49002

3. I, Cheryl Wiseman, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female), and unlawful retaliation because of my complaints of

sex and race discrimination, as set forth below.

**Discrimination and Retaliation**

A. I specifically allege:

[1]        I began working at Respondents on or about January 4, 2016.

[2]        I worked out of my home office in Pennsylvania.

[3]        I last held the position of Manager of Clinical Solutions.

[4]        I consistently performed my job duties in a highly competent manner.

[5]        I last reported to Scott Sagehorn (male), Senior Director of Marketing. Sagehorn reported to Jessica Mathieson (female), Vice President and General Manager.

[6]        Before I reported to Sagehorn, I reported to Steve Bellisari (male), Senior Director of Marketing.

[7]        I was told that Bellisari (male) had sex with a female subordinate.

[8]        In or about May 2016, at a business conference, Beau Whitson (male), Regional Sales Leader, a superior to me, made comments to me of a sexual nature. He told me that he was going to "fuck" me that night. He asked me what hotel I was staying in and what my hotel room number was. He continued asking me questions of a personal nature throughout the evening. I rebuffed his sexual advances.

[9]        In May 2016, following the above, Olivia George (female), Lead Clinical Nurse Consultant, told me that Whitson was "slimy," a "known creep," and had a history of sexually harassing female employees, including George.

[10]        Whitson remains employed with Respondents.

[11]        George (female) told me that she was disciplined for having sex with a male coworker but that the male coworker who she had sex with, Jeff King (male) Account Manager, was not disciplined.

[12]    Male employees routinely commented about female employees' bodies and appearance.

[13]    Male employees treated female employees in a dismissive, demeaning, and condescending manner.

[14]    Male employees regularly made comments of a sexual and sexist nature.

[15]    I never heard male employees making similar comments to male employees.

[16]    I found male employees' comments and conduct to be offensive, based on sex, and contributing to the hostile work environment to which I was subjected.

[17]    In or about August 2018, at a mid-year meeting, I heard Brad Fine (male), Director of Marketing, make a race-based comments to Christina Birckhead (black), Clinical Nurse Consultant, one of my direct reports.  When I objected and told Fine that he had crossed the line in making a racist comment, he told me to get out of his face and to "go the fuck to bed."

[18]    In or about August 2018, immediately following the above, I complained to Bellisari of Fine's race discriminatory comments to Birckhead and demeaning conduct in response to my objection.

[19]    In or about August 2018, following the above, I met with Bellisari and Kate Bekesiack (female), Human Resources, and complained of race discrimination and retaliation.  I complained of Fine's race discriminatory comments to Birckhead (black) and demeaning conduct in response to my objection.

[20]    Respondents failed to investigate my race discrimination and retaliation complaints.

[21]    Respondents failed to take any action to remedy or prevent the race discrimination and retaliation at Respondents.

[22]    In or about August 2019, Malori Paplow (female), Clinical Marketing Manager, told me that Chad Rohrer (male), Director of Sales, told her how many times per day he thought about her and that he masturbated when he thought about her. Paplow told me that, on a business trip, Rohrer whispered his room number in Paplow's ear when he was hugging her, and later called her and asked her to come over to his hotel.

[23]    In or about August 2019, following the above, Paplow told me that she complained to Bekesiack of sexual harassment at Respondents. Bekesiack instructed Paplow to speak with Stephanie Cloney (female), Employee Relations.

[24]    In or about August 2019, following the above, Paplow told me that she complained to Cloney of Rohrer's comments and conduct of a sexual nature. Paplow told me that she complained that Rohrer was making sexual advances toward her, and that there was a pattern of sexual harassment at Respondents. Paplow told her to speak with George and me regarding our experiences.

[25]    On or about August 21, 2019, in a meeting with Cloney, I complained of sexual harassment. I complained of the sexual harassment to which I was subjected by Whitson in May 2016. I complained that Whitson told me that he was going to "fuck" me that night, asked me what hotel I was staying in, what my hotel room number was, and continued asking me questions of a personal nature throughout the evening. I stated that I rebuffed his advances. I explained that I was scared to complain previously, especially as a new employee, because I was afraid of retaliation and that I would lose my job if I spoke up. I complained that there was a pattern of sexual harassment at Respondents.

[26]     Respondents failed to investigate my sex discrimination complaints.

[27]     Respondents failed to take any action to remedy or prevent the sex discrimination at Respondents.

[28]     I heard that Cloney resigned from Respondents because Respondents failed to take action in response to sexual harassment complaints.

[29]     Rohrer remains employed with Respondents.

[30]     In or about May 2019, I began reporting to Sagehorn.

[31]     Sagehorn was aware that I had complained of sex discrimination.

[32]     On April 22, 2020, in a virtual meeting with Sagehorn and Bekesiack, I was issued a Written Warning for alleged expense issues that had occurred months prior. My performance did not warrant a Written Warning. Sagehorn told me that this type of Written Warning, for these types of expense issues, had never previously been issued to any other employee.

[33]     Similarly situated male and/or noncomplaining employees were not issued a Written Warning.

[34]     Respondents issued me a Written Warning because of my sex and/or my sex and/or race discrimination complaints.

[35]     Respondents treated me differently and worse, and in a more hostile and dismissive manner, than male and/or noncomplaining employees were treated.

[36]     On February 8, 2021, I participated in a business lunch with Paplow, Brendan Bayers (male), Sales Account Manager, and Jeff Thompson (male), Director of Clinical Experience. Respondents' policy is that the highest-ranking employee is to pay for business meals and submit the receipts for reimbursement. Thompson was the highest-ranking employee

at the business lunch. Following the lunch, Thompson refused to pay for the full cost of the lunch to submit for reimbursement. I reminded Thompson that Respondents' policy was that the highest-ranking employee is to pay for the business meal and submit the receipt for reimbursement. Thompson still refused to pay the full bill, and only agreed to pay for his own and Bayer's meals, and told me that I should pay for my own and Paplow's meals. He told me that I would fine. Per Thompson's instruction, I paid for Paplow's and my meals and submitted my receipt for reimbursement.

[37]    On February 20, 2021, Sagehorn told me that he would approve my expense reimbursement report for the February 8, 2021 business lunch.

[38]    On February 21, 2021, in a phone call with Danielle Parmalee (female), Compliance, she asked me why Thompson did not pay the full bill for the February 8, 2021 business lunch and why I paid and submitted reimbursement for part of the bill. I explained that Thompson refused to pay the full bill, and instead instructed me to pay for Paplow's and my meals and submit my receipt for reimbursement. I stated that I reminded him of Respondents' policy but, when he still refused to pay for the full bill, I followed his instructions. I asked what I could have done differently when the highest-ranking employee refused to pay. She responded that she did not know what I could have done differently.

[39]    On February 21, 2021, following the above, in a phone call with Sagehorn, I told him about my conversation with Paramlee, and asked if he understood why I paid for Paplow's and my meals and submitted reimbursement for the same, as Thompson refused to pay the full lunch bill. Sagehorn stated that he understood but that I had previously been issued a Written Warning, and he did not know if I this would lead to my termination. I stated that I did

not know what I could have done differently since Thompson refused to pay. Sagehorn did not provide me with any suggestions for what I could have done differently.

[40]    On February 26, 2021, in a phone call with Sagehorn and Morgan Szumski (female), Senior Director of Human Resources, I was terminated, effective immediately. The stated reason was that I requested reimbursement on a company expense that I should not have paid for. I asked why I was being terminated when it was Thompson who had refused to pay the full bill for the business lunch and instructed me to pay for a portion of it and submit the expense for reimbursement. I asked what I should have done differently in that situation. Sagehorn did not answer my question and told me that many people were part of the decision and investigation. I stated that I had positive performance, and asked why I was being terminated instead of being placed in another position. Sagehorn acknowledged my positive performance for 2020 but stated that transferring me to another position at Respondents was not being considered.

[41]    Respondents terminated my employment because of my sex and/or my sex and/or race discrimination complaints.

[42]    I was the only employee reporting to Sagehorn that was terminated effective February 26, 2021.

[43]    I had no opportunity to remain employed with Respondents.

[44]    Before complaining of sex and race discrimination, I had no performance or disciplinary issues.

[45]    Respondents retained and did not terminate Thompson (male).

[46]    Respondents retained and did not terminate male and/or noncomplaining employees who violated Respondents' policies.

[47]    Respondents subjected me to a hostile work environment because of my sex and/or my sex and/or race discrimination complaints.

[48]    Respondents assigned my job duties, responsibilities, and direct reports to Ryan Wieczerza (male), Lead, who had reported to me. I was more qualified to perform my job duties and responsibilities, and manage my direct reports than the noncomplaining male employee to whom they were assigned.

[49]    Respondents' sex discrimination constitutes a continuing violation from my date of hire through my termination date.

[50]    Respondents did not take any action to remedy or prevent the sex discrimination and retaliation to which I was subjected.

[51]    Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[52]    Respondents' comments and conduct evidence a bias against female employees and/or employees who engage in protected activity.

[53]    Respondents have an underrepresentation of female employees in high level positions.

   a) Only three (3) out of the ten (10) employees on Respondent's Leadership Team are female.

   b) Only two (2) out of the nine (9) individuals on Respondent's Board of Directors are female.

   c) Only three (3) out of the twenty-two (22) Regional Managers in Sales Leadership are female.

d) There are no female Area Directors in Sales Leadership; all four

(4) are male.

[54] I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondent who are female, and have been discriminated against based on sex, in connection with the terms and conditions of their employment, including being subjected to a hostile work environment, demotion, failure to promote, compensation, and/or termination.

B. Based on the aforementioned, I allege that Respondent has discriminated against me because of my sex (female), and retaliated against me for complaining of sex and race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, and *et seq.* ("PHRA").

4. The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

    **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):**   **(a); (d)**

    &#95;&#95;&#95;&#95;    Section 5.1 Subsection(s) &#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;

    &#95;&#95;&#95;&#95;    Section 5.2 Subsection(s) &#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;

    &#95;&#95;&#95;&#95;    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) &#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;

5. Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

__X__        This charge will be referred to the EEOC for the purpose of dual

filing.

6.        The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and

    procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation

    complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

4-8-2021                          Cheryl M Wiseman
(Date Signed)         (Signature)    Cheryl Wiseman

# EXHIBIT 2

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: **Cheryl Wiseman** | From: **Philadelphia District Office**<br>**801 Market St, Suite 1000**<br>**Philadelphia, PA 19107** |
|---|---|

| EEOC Charge No.<br>**17F-2021-61252** | EEOC Representative<br>**Damon Johnson,**<br>**State, Local & Tribal Program Manager** | Telephone No.<br>**(267) 589-9722** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By: Karen McDonough
2/9/2023

Enclosures(s)

**Karen McDonough**
**Deputy District Director**

cc:  **For Respondent**
Claire E Throckmorton
Reed Smith LLP
225 Fifth Avenue Reed Smith Centre
Pittsburgh, PA 15222

**For Charging Party**
Emily R Derstine Friesen
Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102